United States District Court
Southern District of Texas
**ENTERED**
May 22, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KYLE DILLON, § | | |
| TDCJ #1268995, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-17-0204 |
| § | | |
| WARDEN ROCKY MOORE, *et al.*, § | | |
| § | | |
| Defendants. § | | |

## **MEMORANDUM AND ORDER**

State inmate Kyle Dillon (TDCJ #1268995) has filed a complaint under 42 U.S.C. § 1983, alleging that two correctional officers (Lieutenant Jose Alvarado and Officer Kyle Prentice) used excessive force against him and that Nurse Carolyn Rose refused to provide him with medical treatment following the incident.[1] Alvarado and Prentice have filed a joint motion for summary judgment [Doc. # 54]. Rose has filed a separate motion for summary judgment [Doc. # 56]. Dillon has filed more than one response, including a motion to deny summary judgment and a motion that requests appointment of counsel [Docs. # 58, # 59, # 61, # 62]. After considering the pleadings, motions, exhibits, and the applicable law, the defendants' motions will be granted and this case will be dismissed for the reasons set forth below.

---

[1] Dillon's complaint against Warden Rocky Moore was dismissed previously for failure to state a claim upon which relief could be granted. *See* Memorandum and Order [Doc. # 43].

**I.     BACKGROUND**

Dillon is presently incarcerated by the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ") at the Polunsky Unit.[2] Dillon's claims stem from an incident that occurred on October 31, 2016,[3] when Dillon was confined in administrative segregation at the Ferguson Unit.[4] Dillon's allegations about that incident are set forth briefly below.

Dillon states that he was being escorted from the recreation yard by Lieutenant Alvarado and Officer Prentice following a quarterly shake down for contraband.[5] Pursuant to prison policy all administrative segregation inmates are escorted by two officers while wearing restraints with both hands cuffed behind their back.[6] At some point, Dillon decided to "step through the handcuffs" to put his hands in front of his body to make it easier to carry a bundle of his property.[7] As soon as he did so, Dillon claims that Alvarado and Prentice slammed him to the concrete floor, "scraping skin

---

[2]     Notice of Address Change [Doc. # 63], at 1. For purposes of identification, all page numbers refer to the pagination inserted by the court's electronic filing system, CM/ECF.

[3]     Complaint [Doc. # 1], at 4.

[4]     More Definite Statement [Doc. # 10], at 1.

[5]     *Id.*

[6]     *Id.*

[7]     *Id.*

off [his] face, shoulder, ear, and both knees."[8] Dillon contends that the amount of force used was excessive and that Nurse Rose failed to treat his injuries or document a concussion that he sustained as a result of the incident.[9] Dillon seeks compensatory and punitive damages from these defendants in their individual or personal capacity for the violation of his constitutional rights.[10]

Alvarado and Prentice move for summary judgment, arguing that the use of force was necessary after Dillon disobeyed orders by improperly stepping through his handcuffs and that the amount of force employed was not excessive to the need.[11] In support of their motion, Alvarado and Prentice provide the TDCJ Use of Force Report that was prepared following the incident, a copy of the TDCJ Use of Force Plan, and records from a disciplinary proceeding that was filed against Dillon as a result of the incident.[12] Rose also moves for summary judgment, providing records and photographs from the physical examination conducted after the use of force, showing

---

[8] Complaint [Doc. # 1], at 4.

[9] *Id.*

[10] Claims against the defendants in their official capacity as state employees have been dismissed previously as barred by the Eleventh Amendment. *See* Memorandum and Order [Doc. # 43].

[11] Alvarado and Prentice's Motion for Summary Judgment [Doc # 54], at 11.

[12] *See id.* (Exhibits A, B, & C).

3

that Dillon sustained only minor abrasions that did not require treatment.[13]

Disciplinary records show that Dillon was found guilty in Case No. 20170068805 of creating a disturbance that resulted in a use of force.[14] As a result of that conviction, Dillon's commissary privileges were suspended for 30 days and he was restricted to his cell for 15 days.[15] Arguing that Dillon's constitutional rights were not violated, all three defendants contend that they are entitled to qualified immunity from the claims against them.

## II. STANDARD OF REVIEW

The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under this rule, a reviewing court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the

---

[13] *See* Rose's Motion for Summary Judgment [Doc. # 56], at 8 (referencing Exhibits A & B).

[14] Offense Report [Doc. # 54-2], at 3.

[15] TDCJ Disciplinary Worksheet [Doc. # 54-2], at 8.

nonmoving party. *Id*.

If the movant demonstrates the absence of a genuine issue of material fact, the burden shifts to the non-movant to provide "specific facts showing the existence of a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A reviewing court "must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment[.]" *Smith v. Regional Trans. Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). However, a non-movant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty., Miss.*, 678 F.3d 344, 348 (5th Cir. 2012) (quoting *TIG Ins. Co. v. Sedgwick James of Washington*, 276 F.3d 754, 759 (5th Cir. 2002)); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (a non-movant cannot demonstrate a genuine issue of material fact with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

### III. DISCUSSION

#### A. Qualified Immunity

Public officials acting within the scope of their authority generally are shielded from a suit for monetary damages by the doctrine of qualified immunity. *See Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff seeking to overcome qualified immunity must satisfy a two-prong inquiry by showing: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). This is an "exacting standard" that protects "all but the plainly incompetent or those who knowingly violate the law." *City & Cnty. of San Francisco v. Sheehan*, — U.S. —, 135 S. Ct. 1765, 1774 (2015) (citation omitted).

If a plaintiff succeeds in showing that a defendant's actions violated a clearly established constitutional right, the final step of the analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's "actions were objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth,* 382 F.3d 529, 537 (5th Cir. 2004). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citation omitted). "An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight." *Id*. (citation omitted).

As this standard reflects, "[a] good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that

6

the defense is not available." *King v. Handorf*, 821 F.3d 650, 653-54 (5th Cir. 2016) (internal quotation marks and citations omitted). "The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Id*. at 654 (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008)). "To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present 'absolute proof,' but must offer more than 'mere allegations.'" *Id*. (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).

**B.     Eighth Amendment Claims Against Alvarado and Prentice**

Dillon contends that Alvarado and Prentice violated the Eighth Amendment by slamming him to the concrete floor with excessive force. Claims of excessive force in the prison context are governed by the Eighth Amendment, which prohibits cruel and unusual punishment. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 319-21 (1986). Not every malevolent touch by a prison guard gives rise to a constitutional violation under the Eighth Amendment. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.")). The Constitution excludes from recognition *de*

*minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 10 (citation and quotation omitted). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6-7; *see also Whitley*, 475 U.S. at 320-21.

The Supreme Court has articulated the following relevant factors to consider in evaluating whether force used was excessive to the need: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7 (citation omitted); *see also Cowart v. Erwin*, 837 F.3d 444, 452 (5th Cir. 2016) (reciting the "well-known *Hudson* factors"). The Fifth Circuit has recognized that these factors are "not exclusive" and that "each case must be judged on its own facts." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998). In that regard, the amount of force that is constitutionally permissible "must be judged by the context in which that force is employed." *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996).

### 1. Dillon Does Not Establish a Constitutional Violation

According to the Use of Force Report, Lieutenant Alvarado and Officer

8

Prentice were escorting Dillon back to his cell in administrative segregation following a search of his property when Dillon stopped and began to step through his hand restraints, which had been positioned behind his back, moving them to the front of his body.[16] Alvarado ordered Dillon to stop, but Dillon refused to obey.[17] At that time, Alvarado and Prentice applied "forward downward pressure and guided [Dillon] to the floor in a face down prone position."[18] While on the ground Dillon continued to resist the officers, who radioed for help.[19] After other officers arrived Dillon was escorted to the unit infirmary, where Nurse Rose noted that he had minor "scrapes and bruises" on his face, left elbow, left hand, and both knees.[20] Officials who reviewed the incident determined that force was used in a manner that was consistent with the TDCJ Use of Force Plan after Dillon refused to obey orders and pulled away from the officers.[21]

Addressing each of the *Hudson* factors, the defendants argue that force was necessary to gain compliance and ensure their safety because Dillon stepped through

---

[16] TDCJ Use of Force Report [Doc. # 54-1], at 9.

[17] *Id.*

[18] *Id.* at 9, 17-18.

[19] *Id.* at 9.

[20] *Id.*

[21] *Id.* at 4, 5.

9

his handcuffs and disobeyed orders to cease doing so.[22] The defendants argue further that the force employed was limited to the minimum amount necessary to secure Dillon's compliance and tempered by Lieutenant Alvarado's efforts to reason with Dillon several times while Dillon attempted to move his restraints to the front of his body, which posed a serious risk to the officer's safety and institutional security.[23] The defendants note, moreover, that Dillon sustained only minor injuries as a result of the use of force.[24]

The record reflects that Dillon was examined immediately after the use of force occurred by Nurse Rose, who determined that Dillon sustained abrasions on his knees, left arm, and face, but that his injuries were "minor" and did not require any treatment.[25] Photographs taken after the incident occurred confirm that Dillon sustained minor abrasions to his face, left arm, and knees.[26] Injuries such as these are considered minimal and are insufficient to make an excessive-force claim under the Eighth Amendment. *See Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (holding that a sore, bruised ear lasting for three days was *de minimis* and would not

---

[22] Defendant Alvarado and Prentice's Motion for Summary Judgment [Doc. # 54], at 11.

[23] *Id*. at 12.

[24] *Id*. at 9-11.

[25] Use of Force Report [Doc. # 54-1], at 35.

[26] Photographs [Doc. # 56-3], at 15-17.

support an excessive-force claim); *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (holding that sore muscles, scratches, abrasions, and bruises do not rise above the level of *de minimis* injury and are insufficient to support a claim for damages under the Eighth Amendment or the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e)); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (noting that a significant injury is not required, but that the "absence of serious injury" may indicate that the amount of force applied was "not of a sort repugnant to the conscience of mankind") (quoting *Hudson*, 503 U.S. at 7, 9-10).

Dillon contends that he sustained a more serious injury as a result of the use of force, namely, a concussion which Nurse Rose failed to document.[27] However, other than his conclusory statement, Dillon does not present any evidence in support of this allegation. Indeed, it is contradicted by medical records submitted by Nurse Rose. Those records reflect that Dillon was treated at a different prison facility several days after the use of force at issue in this case, but complained only of muscle soreness and stiffness,[28] which was treated with acetaminophen (Tylenol).[29] Under these circumstances, Dillon's unsupported allegations do not demonstrate that excessive

---

[27] Opposition to Defendant Lt. Alvarado and Prentice's Motion for Summary Judgment [Doc. # 58], at 2.

[28] Nursing Protocol for Musculoskeletal Symptoms dated Nov. 5, 2016 [Doc. # 56-3], at 34.

[29] *Id*. at 38.

11

force was used maliciously or sadistically in violation of the Eighth Amendment and do not otherwise defeat qualified immunity.[30] *See Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 216) ("Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation are all insufficient to overcome [qualified] immunity.") (citation and internal quotation marks omitted). Therefore, Alvarado and Prentice are entitled to summary judgment on the Eighth Amendment claims against them.

### 2. The Defendants' Actions Were Objectively Reasonable Under the Circumstances

Alternatively, assuming that Dillon suffered an injury that was more than *de minimis* and that a constitutional violation occurred, Alvarado and Prentice argue further that they are still entitled to qualified immunity because their actions were objectively reasonable in light of existing law and the information they possessed.[31] As noted above, the use of force occurred while Alvarado and Prentice were returning Dillon to his cell in administrative segregation, which features the most restrictive

---

[30] Dillon notes that medical records from an examination done on November 3, 2016 show that he had a black eye, which he claims was inflicted during the use of force that occurred on October 31, 2016. *See* Plaintiff's Response to Defendant Rose's Motion for Summary Judgment [Doc. # 61], at 2. Photographs taken after the incident, however, show that there was no bruising, swelling, or other injury near either one of Dillon's eyes. *See* Photographs [Doc. # 56-3], at 15. Because the photographs contradict Dillon's claim, this allegation is insufficient to raise a genuine issue of material fact.

[31] Defendant Alvarado and Prentice's Motion for Summary Judgment [Doc. # 54], at 13-14.

conditions within the prison's classification system and is typically reserved for inmates who are "dangerous, either to other offenders or staff[.]"[32] Dillon does not deny that the officers who were escorting him had applied restraints in compliance with TDCJ policy that requires administrative segregation inmates to be cuffed with their hands behind their backs.[33] Dillon also concedes that he stepped through his handcuffs on the date in question.[34] Officials who reviewed the incident concluded after conducting an administrative investigation that the use of force was consistent with the TDCJ Use of Force plan and justified under the circumstances to secure Dillon's compliance with repeated orders, which Dillon refused to obey.[35] Use of force is considered an appropriate response where an inmate refuses to obey repeated orders. *See Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("If it is an order that requires action by the institution, and the inmate cannot be persuaded to obey the order, some means must be used to compel compliance, such as a chemical agent or physical force.").

Dillon argues that the defendants' actions were not justified because "[n]o one

---

[32] TDCJ Offender Orientation Handbook, at p. 6, available at http://www.tdcj.state.tx.us (last visited May 18, 2018).

[33] More Definite Statement [Doc. # 10], at 1.

[34] *Id.*

[35] TDCJ Use of Force Report [Doc. # 54-1], at 4, 5.

13

could reasonably believe" that he posed a threat to the officers.[36] Dillon's argument, however, is unsupported by specific facts or admissible evidence showing that their actions were not taken in a good-faith effort to restore order. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-21. This is insufficient to raise a genuine issue of material fact on whether the defendants' actions were objectively unreasonable under the circumstances in view of existing law and the facts known to them. *See King*, 821 F.3d at 654; *Brown*, 623 F.3d at 253. Because Dillon has failed to meet his burden to show that the actions taken by Alvarado and Prentice were objectively unreasonable, these defendants are entitled to qualified immunity for this additional reason. Accordingly, the motion for summary judgment filed by Alvarado and Prentice will be granted.

### C. Eighth Amendment Claims Against Nurse Rose

Dillon contends that Nurse Rose violated the Eighth Amendment by failing to treat or document a concussion that he sustained as a result of the use of force. A prison official's "deliberate indifference to serious medical needs of prisoners" can constitute "unnecessary and wanton infliction of pain" of the type proscribed by the Eighth Amendment and actionable under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The deliberate indifference standard is an "extremely high" one

---

[36] Opposition to Defendant Lt. Alvarado and Prentice's Motion for Summary Judgment [Doc. # 58], at 1.

14

to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A showing of deliberate indifference requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

As noted above, medical records and photographs taken after the use of force reflect that Dillon sustained minor abrasions to his face, left arm, and knees.[37] Although Dillon was treated several days after the incident, medical records from that examination show that he complained only of muscle soreness and stiffness.[38] The medical records of this examination, which was conducted at a different prison facility, refute Dillon's claim that he suffered a concussion as a result of the use of force that occurred on October 31, 2016, or that Nurse Rose refused to treat him or document this injury with deliberate indifference to a serious medical need. Because Dillon does not show that Nurse Rose violated the Eighth Amendment, she is entitled to qualified immunity and her motion for summary judgment on this issue will be granted.

---

[37] Use of Force Report [Doc. # 54-1], at 35; Photographs [Doc. # 56-3], at 15-17.

[38] Nursing Protocol for Musculoskeletal Symptoms dated Nov. 5, 2016 [Doc. # 56-3], at 34.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1. The motion for summary judgment filed by Defendants Jose Alvarado and Kyle Prentice [Doc. # 54] and the motion for summary judgment filed by LVN Carolyn Rose [Doc. # 56] are **GRANTED**.

2. Plaintiff Kyle Dillon's motion to deny summary judgment and motion for appointment of counsel [Docs. # 59, # 62] are **DENIED**.

3. This case is **DISMISSED with prejudice**.

SIGNED at Houston, Texas on May 22, 2018.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE